IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.    FRANKLIN A. CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-16-1415-C |
| | ) | |
| 1.    SEQUEL OF OKLAHOMA, LLC d/b/a SEQUEL YOUTH & FAMILY SERVICES, | ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiff, Franklin A. Calvin, and for his Complaint against the Defendant alleges and states as follows:

## PARTIES

1. The Plaintiff is Franklin A. Calvin, an adult male residing in Oklahoma County, Oklahoma.

2. The Defendant is Sequel of Oklahoma, LLC d/b/a Sequel Youth & Family Services, an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on the following claims: (a) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA"); (b) interference with and retaliation for Plaintiff's use and/or attempted use of

medical leave under the Family Medical Leave Act ("FMLA"); (c) worker's compensation retaliation in violation of Oklahoma state law; and (d) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities.

4.      Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.      Plaintiff has exhausted his administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 30, 2016.  Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated October 26, 2016 and received by mail thereafter.  Plaintiff has timely filed this action within ninety (90) days of receipt of his notice of right to sue.

6.      Defendant is located in Oklahoma County and all acts complained of occurred in or around Oklahoma County.  Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

**STATEMENT OF FACTS**

7.      In or around April 2009, Plaintiff Franklin A. Calvin began his employment with Defendant as a Residential Counselor at Rose Rock Academy, a facility owned and

operated by Defendant which provides in-patient treatment for children with autism and other developmental disabilities. Thereafter, Calvin also performed work as a Behavioral Specialist.

8. Calvin's job performance was at least satisfactory, if not excellent.

9. In or around 2007, Calvin was diagnosed with Type II Diabetes. He has been insulin dependent since in or around Spring 2015.

10. In or around 2012, Calvin applied for intermittent leave under the FMLA due to his disability. At that time, Calvin occasionally missed partial and full days due to fluctuating blood sugar issues and doctor's appointments related to his diabetes. Calvin submitted the request to Human Resources Manager Sheryl Denny and such request was granted. Plaintiff's intermittent FMLA leave continued throughout his employment with Defendant.

11. In or around 2014, Calvin was written up by his supervisor, Miss Bell, allegedly for being tardy. Bell stated that she understood Calvin was on FMLA leave, but he needed to work on being on-time for his shift. However, Calvin's tardiness was due to his diabetes. For instance, if Calvin's blood sugar tested too high or low in the morning, he was required to give himself insulin and wait approximately 30 minutes to see if his blood sugar stabilized before driving to work. On these occasions, Calvin advised his supervisors that he may be late or unable to report to work due to his diabetes.

12. Beginning in or around early 2015, Defendant began experiencing short-

staffing. This resulted in workplace accidents which were otherwise avoidable. For instance, in or around early 2015, Calvin contracted a staph infection from a client. Calvin was placed on light duty wherein he could not hold or lift a patient for approximately one week until the infection cleared. Then, in or around Summer 2015, Calvin sustained an on-the-job injury while placing a patient in a hold, resulting in his fingers being bent backward. He returned to work with a restriction of no lifting or holding a patient for approximately two to three weeks.

13. In or around Summer 2015, Dwain Shaw became the CEO for Defendant.

14. In or around November 2015, Calvin suffered another on-the-job injury. Calvin was diagnosed with a possible meniscal (knee) tear. Calvin sought medical treatment for such injury and was placed on light duty office work.

15. Due to his diabetes and on-the-job injuries as set forth above, Calvin is a qualified individual with a disability within the meaning of the ADA and ADAAA, in that he was disabled, has a record of disability, and/or was perceived as disabled. Further, his disabilities substantially limit and/or limited him in one or more of his major life activities, including but not limited to eating, moving, walking, standing and thinking. His disability impacts one or more of his internal bodily processes, including but not limited to endocrine function, digestive function, pancreatic function, and musculoskeletal function. However, at all times relevant hereto, he was able to perform the essential functions of his job with or without reasonable accommodations.

16. In or around December 2015, Calvin made a request to Shaw for a reasonable accommodation. Particularly, Calvin told Shaw he needed a safe, climate-controlled place to store his insulin and needles. At that time, Defendant had removed all refrigerators from the housing units and other acceptable locations were too far from Calvin's work unit in instances where Calvin immediately needed insulin. Shaw told Calvin to submit his request in writing and it would be considered. Shaw further directed Calvin to submit a new request for intermittent FMLA.

17. Calvin submitted his accommodation request and FMLA paperwork to HR Manager LaShonda Suetopka on or about December 14, 2015. Calvin did not receive a response following his submissions.

18. Calvin was released to return (related to his knee injury) to the floor on or about January 14, 2016. At that time, Calvin asked Scheduler Robert (last name unknown) that he be assigned to Windsor Unit, if possible. Calvin had primarily worked in the Windsor Unit previously. Calvin told Robert that he had a good relationship with the clients in Windsor, alleviating some of the stress of his position. Calvin also told Robert this would help in controlling his blood sugar, which is affected by stress. Calvin also told Robert that he was still willing to work other units, if necessary.

19. On or about February 1, 2016, Calvin was selected to meet with a consulting firm and DHS representative regarding the facility's operations. Calvin's understanding was that this group was preparing the facility for a state audit. In such discussion, Calvin reported

concerns about facility conditions, short staff, and client safety. For instance, staff often had to get hot water from the kitchen facility for clients to have hot baths. On one occasion, the cafeteria could not be used due to backed up sewage. And, a kitchen flood resulted in black mold in the facility, including in the Windsor unit.

20.     Most significantly, during the meeting Calvin questioned Defendant's decision to place a non-verbal female child in a room with two males. Calvin voiced his concern that this placement was inappropriate due to the female's history and the female's inability to speak.

21.     The next day, on or about February 2, 2016, the female patient was assaulted by one of her male roommates. As required by Defendant's procedure, Calvin wrote a statement regarding the incident and submitted it to Night Supervisor Thaddeus (last name known).

22.     The following day, Calvin was told by Program Manager Brian Harden to rewrite his statement. Calvin told Harden the statement was written exactly how the incident occurred and asked what needed to be changed. Harden said it was Shaw who requested a rewritten statement because Shaw did not understand what Calvin wrote. By way of example, Harden said Shaw did not understand what Calvin meant when he wrote that the male patient "leaned over" the female patient and kissed her. In an effort to obtain clarification as to what needed to be addressed in the statement, Calvin told Harden that he would rewrite the statement if Harden could provide in writing what needed to be rewritten.

23. Later that day, Calvin was called to a meeting with Shaw and Harden. Shaw said there were issues with the way Calvin wrote the statement and it needed to be rewritten. Calvin asked twice why the statement needed to be rewritten and for Shaw's specific concerns with the statement. Calvin told Shaw he was not trying to be insubordinate, but wanted written clarification on the concerns Shaw had with the statement. Shaw disagreed and abruptly ended the meeting.

24. About one (1) hour later, Calvin was called back to Shaw's office and told he was being placed on a one (1) day suspension without pay. Shaw stated that he would not tolerate Calvin's refusal to rewrite his statement and refusal to work units other than Windsor (referring to Calvin's reasonable accommodation request). Calvin told Shaw that he had not refused to work other units, and that his request to work Windsor was due to his disability. Calvin further stated he would consider rewriting the statement if Shaw provided in writing what needed to be addressed in the revision. Calvin also told Shaw and Harden that it was their job to protect the female child, and although Defendant was experiencing census issues they were not providing a safe environment for their clients. Shaw then told Calvin to leave his keys on the desk and that Calvin was fired.

25. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered injuries as described below.

## COUNT I - ADA/ADAAA

For his first cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

26. The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

27. More specifically, Plaintiff was a qualified individual with a disability, in that, he suffers from physical impairments (i.e., diabetes, meniscal tear) which substantially limit his ability to perform one or more major life activities as set forth above. Further, Plaintiff's disabilities impact one or more of his internal bodily processes, as shown herein.

28. Plaintiff was regarded as disabled by Defendant because he had an actual or perceived impairment, that impairment was neither transitory nor minor, and Defendant was aware of and perceived the impairment at the time of Plaintiff's termination.

29. Despite said impairments, Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodations at all relevant times hereto.

30. Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

31. Plaintiff is further entitled to relief because he engaged in a protected activity (requesting reasonable accommodation, including but not limited to medical leave, light duty, and safe storage for his insulin), suffered an adverse action (suspension and termination), and a causal connection exists between his requests and the adverse action.

32. As a direct and proximate result of Defendant's actions, Plaintiff has suffered

lost income, past and future, emotional distress and other non-pecuniary losses.

33. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT II - FMLA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

34. The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

35. Plaintiff was entitled to medical leave because he worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

36. Plaintiff suffered from a serious health condition (i.e., diabetes, meniscal tear) requiring continued medical treatment by a health care provider.

37. Defendant interfered with Plaintiff's rights under the FMLA by terminating him while he was on intermittent FMLA.

38. Defendant also retaliated against Plaintiff for his use of FMLA leave by terminating Plaintiff in close temporal proximity of his exercise of FMLA rights. Defendant's actions were taken in response to Plaintiff's exercise of rights under the FMLA.

39.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

40.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recover of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendant's violation of the FMLA, attorneys' fees and costs.

## COUNT III - Workers' Compensation Retaliation

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

41.     The matters alleged above constitute retaliation in violation of the Oklahoma Administrative Workers' Compensation Act.

42.     Plaintiff sustained a job-related injury for which he could assert a claim for benefits under the Oklahoma Workers' Compensation Act. And, Plaintiff received medical treatment for such injury. Defendant had knowledge of Plaintiff's work-related injury. And, Plaintiff was consequently fired.

43.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

44.     Defendant's actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## COUNT IV - *BURK* TORT

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

45.     The acts above-described constitute a violation of Oklahoma's public policy[1] which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

46.     Plaintiff has suffered injuries and is entitled to recovery all damages or other relief allowed by state law, including but not limited to, lost wages (past and future), emotional distress damages, punitive damages, and attorney's fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, liquidated damages, and punitive damages together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

---

[1] Such legislative intent is embodied in Oklahoma state law, including but not limited to the Oklahoma Children's Code, 10A O.S. §1-1-101 *et seq.*

**RESPECTFULLY SUBMITTED THIS 12th DAY OF DECEMBER, 2016.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800     (telephone)
(405) 239-3801     (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
